**In re M.S.M. & ASSOCIATES, INC., a Colorado corporation, Debtor(s).**

**Bankruptcy No. 88-00042.**

United States Bankruptcy Court,
D. Hawaii.

Aug. 3, 1989.

**313**

Steven K.S. Chung and Stephen K. Bollinger, Honolulu, Hawaii, for debtor.

Frederick Rohlfing, III, Honolulu, Hawaii and J. Lawrence Hamil, Denver, Colo., for Turnmar Corp., et al.

FINDINGS OF FACT, CONCLUSIONS OF LAW RE: CONFIRMATION OF DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION

JON J. CHINEN, Bankruptcy Judge.

On May 22, 1989, the Motion to Confirm Debtor–in–Possession, M.S.M. & Associates, Inc.'s ("MSM") Second Amended Plan of Reorganization ("Plan") came on for hearing before this Court, with Steven K.S. Chung, Esq. and Stephen K. Bollinger, Esq., representing MSM; Patrick Y. Taomae, Esq. representing Michael Wong, John Kim and JHK, Inc.; Curtis B. Ching, Esq. representing the U.S. Trustee's Office; Simon Klevansky, Esq. representing Aiko N. Morita and James M. Morita, individually and as Trustee for Caryn S. Morita and Marie M. Morita; H. William Burgess, Esq. representing A.I.E. Ventures; Jason N. Baba, Esq. representing Dames & Moore; Troy Egami, Esq. representing Republic National Bank; and J. Lawrence Hamil, Esq. and Frederick W. Rohlfing III, Esq. representing Turnmar Development Corporation ("Turnmar Corp."), Tehmina Marsh ("T. Marsh") and M.F. Irrevocable Trust ("MF Trust").

Based on the arguments of counsel and the records and files in this case, the Court makes the following Findings of Fact and Conclusions of Law.

1. This case was commenced on January 25, 1988 when MSM filed for protection under Title 11, Chapter 11 of the United States Code. Prior to its filing, MSM was engaged in the development of real property known as the Ewa Marina Community Project ("Project").

2. The bar date established by this Court for the filing of claims was June 1, 1988.

3. Prior to or as of June 1, 1988, the claims filed by creditors or recognized by MSM totalled approximately $12,000,000.00.

4. Having previously sold its principal asset, comprised of all of its real and personal property and rights pertaining to the Project, MSM's remaining assets consist of approximately $15.8 million in cash and $772,000.00 worth of notes receivable and interest thereon. Thus, as of June 1, 1988, MSM appeared to be solvent, and it appeared that a distribution could be made to equity holders.

5. On March 3, 1989, MSM filed a Plan of Reorganization which contained just one class of unsecured creditors.

6. On March 30, 1989, Turnmar Corp. filed its Amended and Supplemental Proof of Claim in the amount of $4,295,904.75 and MF Trust and T. Marsh filed claims of $2,281,450.00 and $1,140,725.00, respectively. The filing of these additional claims caused the total claims filed against or recognized by MSM to exceed its available assets. The filing of these claims also caused MSM to file its Second Amended Plan of Reorganization ("Plan") which separated the claims of unsecured creditors into four classes.

7. The four classes of creditors became necessary because Turnmar Corp., T. Marsh and/or MF Trust filed objections to the claims of certain unsecured creditors and they also filed Adversary Proceeding No. 89–0021 seeking to subordinate the claim of A.I.E. Ventures, a contractually subordinated creditor, to the claims and/or interests which they hold.

8. The four classes of unsecured creditors also became necessary because MSM

and other creditors indicated that they would be filing objections to the claims of Turnmar Corp., T. Marsh and MF Trust, and, indeed, said objections have been filed. Among other things, MSM asserts that the claims of T. Marsh and MF Trust appear to be claims for rescission which, under the *Stirling Homex* doctrine, are by their nature subordinate to the claims of creditors but superior to the interests of equity holders. *Matter of Stirling Homex Corporation*, 579 F.2d 206 (2d Cir.1978).

9. The Plan establishes seven classes of claims or interests. Classes 1 and 2 are administrative claims. Class 3 is the class which presently contains all of MSM's general unsecured creditors except A.I.E. Ventures, which alone occupies Class 5. Class 4 is presently vacant and is intended for any creditor claim which is found superior to A.I.E. Ventures, but junior to the claims of general unsecured creditors. Class 5 is the contractually subordinated unsecured claim of A.I.E. Class 6, which is also presently vacant, is the class intended for creditors found subordinate to A.I.E. Ventures. Class 7 is the final class and is composed of all the equity interests. All of MSM's shareholders are in Class 7 and there are no classes under the Plan which are junior to this class.

10. The Plan calls for the liquidation of all of MSM's assets, the payment of administration expenses and the distribution of all remaining funds to all of MSM's creditors to the extent their claims are allowed, in accordance with their order of priority. MSM will also be dissolved and any funds remaining after payment of all allowed creditor claims will be distributed to the equity holders in accordance with their respective rights.

11. MSM contends that the Plan leaves unaltered the legal, contractual and equitable rights of all creditors; thus, they are unimpaired. MSM also states that, since the Plan calls for the dissolution of MSM, the interest of the Plan 7 shareholders are impaired.

12. Although the Plan provides that Walter Tagawa, MSM's President will continue to serve as President until the case is closed, the Plan does not disclose the names of the Board of Directors. Neither does the Plan disclose the salary of the President and of the other officers.

13. The voting by the Class 7 shareholders shows that 224,570 shareholders votes were in favor of the Plan and 47,114 shareholders votes were against the Plan. More than two-thirds of the shareholders casting ballots have voted to approve the Plan.

14. Until Adversary No. 89–0021 and the objections to the claims of certain unsecured creditors are resolved, it is not known whether there will be any claim in Class 4 or 6. The amount of claim in Classes 4 and 6 are not known. And, no estimate of the value of any claim in Classes 4 and 6 has been made.

15. Until all the adversaries and contested matters, now pending or proposed, are finally resolved, it cannot be stated whether any class of unsecured creditor is impaired. The Plan acknowledges that, if all of the claims, including those of Turnmar Corp, T. Marsh and MF Trust are recognized, then certain class or classes of unsecured claims will not receive anything under the Plan.

18. MSM contends that all unsecured creditors are unimpaired and that, even if they are impaired, the Plan nevertheless is fair and equitable because the creditors will be receiving under the Plan exactly what they will be receiving under Chapter 7 liquidation.

## CONCLUSIONS OF LAW

1. Pertinent provisions of 11 U.S.C. § 1129 read as follows:

(a) The court shall confirm a plan only if all of the following requirements are met:

(1) The plan complies with the applicable provisions of this title.

(2) The proponent of the plan complies with the applicable provisions of this title.

(3) The plan has been proposed in good faith and not by any means forbidden by law.

. . . .

(5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

. . . .

(8) With respect to each class of claims or interests—

(A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

. . . .

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.  •

. . . .

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interest that is impaired under, and has not accepted, the plan.

2. Impairment is defined in 11 U.S.C. § 1124 which states in relevant part that a class of unsecured claims is impaired under a plan unless the plan leaves unaltered all legal, equitable and contractual rights to which each holder of a claim in the class is entitled, or provides for payment of the present value, as of the effective date of the plan, of the allowed amount of each claim in the class.  11 U.S.C. § 1124(1) and (3).

3. Where creditors holding general unsecured claims, as in Class 4 and/or Class 6, may not receive anything under the Plan, they are impaired. *In re Copy Crafters Quietprint, Inc.*, 92 B.R. 973 (Bankr.N.D.N.Y.1988).  Thus, the holders of class 4 or 6 must be given the voting rights afforded by 11 U.S.C. § 1126.

4. And, 11 U.S.C. § 1129(a)(10) provides that, if one or more classes of claims is impaired, at least one impaired class of claims must affirmatively vote to accept the plan.  However, in the instant case, because the members of Classes 4 and 6 are not yet known, they were not given the opportunity to accept or reject the plan.

5. In addition, contrary to the provisions of 11 U.S.C. § 1129(a)(5), except for the name of Mr. Tagawa as President, the Plan fails to name the individuals proposed to serve as officers or directors after confirmation.

6. MSM argues that, even if some classes of unsecured creditors are impaired under the Plan, their impairment is inconsequential because the Plan may be confirmed under 11 U.S.C. § 1129(b), the "cramdown" provision.  However, section 1129(b) is not applicable until all requirements of section 1129(a), except 1129(a)(8), have been satisfied.  See, 5 *Collier on Bankruptcy* ¶ 1129[8], (15th Ed.1988).  Because the Plan characterizes certain classes which may be impaired as being unimpaired, the Plan does not meet all necessary requirements of section 1129(a).

8. Another requirement of 11 U.S.C. § 1129(a) that the Plan fails to satisfy is that set out in 11 U.S.C. § 1129(a)(7).  According to that subsection, every holder of a claim in an impaired class must either vote to accept the reorganization plan, or must receive under the plan value in an amount not less than the holder would have received in a liquidation of the debtor under Chapter 7 of the Bankruptcy Code as

of the date of Confirmation of the Plan. 11 U.S.C. § 726(a) lists the order of priority of distributions and thereby determines the value that holders of claims would receive under Chapter 7.

9. Pursuant to 11 U.S.C. § 726(a)(5) the principal amount and the pre-petition interest on all allowed claims of all descriptions must be paid before any post-petition interest may be paid on any claim. Consequently, if a Chapter 11 plan pays one class of claims post-petition interest before subsequent classes receive full payment of principal and pre-petition interest, the subsequent classes will not receive as much value as they would have received under a Chapter 7 liquidation conducted in accordance with section 726(a). Debtor's Plan does just that. The Plan contemplates payment, upon confirmation, of the principal amount of certain unsecured and unsubordinated claims, together with interest accrued through July 31, 1989. Second Amended Disclosure Statement, p. 16. That constitutes approximately 18 months of post-petition interest. Payment of such interest upon confirmation virtually assures that claims subsequently adjudicated to fall into subordinate classes will receive less under the Plan than they would have received in a Chapter 7 liquidation.

10. Finally, 11 U.S.C. § 1129(a)(5) states that the Court may not confirm a plan unless:

(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor ...; and

(ii) the appointment to or continuance in, such office or such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

11. MSM has completely ignored the disclosure requirements of section 1129(a)(5). Identification of individuals who will serve as directors, officers and employees of MSM after confirmation is particularly important in this case where profound disputes among the MSM's shareholders and directors are apparent. MSM's failure to satisfy these disclosure requirements prevents the Court from confirming the Plan.

12. Three aspects of the Plan create a substantial barrier to its confirmation. First, it acknowledges that, if all filed claims are allowed, the estate's assets will not be sufficient to make full payment of all claims. Second, it proposes to make full payment of certain claims upon confirmation and then to litigate the validity and priority of certain other claims. Third, it presumes that all claims to which objection has been made will either be disallowed, or subordinated to the class of claims paid in full upon confirmation. MSM might, however, be wrong in predicting the results of the future litigation to disallow or subordinate claims.

13. If the Plan is confirmed, claims in Class 3 will be paid in full and litigation to determine the amount and priority of other claims will ensue. It appears that some of the adversary proceedings and contested matters contemplated by the Plan have not yet even been commenced. As to the adversary proceedings and contested matters that have begun, none has been decided and it would be imprudent for this Court to speculate about their outcome.

14. It is certain, however, that if all filed claims are allowed, and if no legal basis is established to subordinate them to the claims of Class 3, there will not be sufficient remaining assets to pay them in full. As a result, holders of some claims in Class 3 would receive full payment and others would receive, at most, partial payment. That result is forbidden by 11 U.S.C. § 1129(b) and prevents confirmation of the Plan.

This Court will issue a separate order denying confirmation of Debtor's Second Amended Plan of Reorganization.